UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

26CR147 JWB|ECW

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHRISTOPHER A. BRAVO MARIN,

Defendant.

**INDICTMENT**

18 U.S.C. § 1956(h)
18 U.S.C. § 982(a)(1)

THE UNITED STATES GRAND JURY CHARGES THAT:

**INTRODUCTION**

1. At all times relevant to this Indictment:

a. Defendant **CHRISTOPHER A. BRAVO MARIN ("BRAVO")** was a resident of Minneapolis, Minnesota. **BRAVO** has been an employee of Money Transmitter since 2013.

b. Money Transmitter is a small Minnesota-based money services business ("MSB") registered with the Financial Crimes Enforcement Network. Money Transmitter provides customers various services, including money transfers, check cashing, money orders, and bill pay. Money Transmitter sends remittances to Mexico and countries in Central and South America. Aside from **BRAVO**, Money Transmitter employs one other person. Money Transmitter is an agent of three international MSBs.

LT SCANNED
AUG 20 2026
U.S. DISTRICT COURT MPLS

**COUNT 1**
Conspiracy to Engage in Money Laundering
(18 U.S.C. § 1956(h))

2. Paragraph 1 is incorporated by reference as if fully set forth herein.

3. From at least in or about February 2023 to at least in or about February 2026, in the State and District of Minnesota and elsewhere, the defendant,

**CHRISTOPHER A. BRAVO MARIN,**

did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with others, known and unknown to the Grand Jury, to transport, transmit or transfer, or attempt to transport, transmit or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States, knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represented the proceeds of some form of specified unlawful activity and knowing that such transportation, transmission, or transfer was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity, and to avoid a transaction reporting requirement under State or Federal law, in violation of Title 18, United States Code, Sections 1956(a)(2)(B)(i), 1956(a)(2)(B)(ii), all in violation of Title 18, United States Code, Section 1956(h).

**MANNER AND MEANS OF THE CONSPIRACY**

The manner and means by which **BRAVO** and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4. **BRAVO** conspired with members of a Cartel de Jalisco Nueva Generacion drug distribution cell in Minnesota to launder hundreds of thousands of dollars in drug proceeds and transfer them to cartel leaders in Mexico through Money Transmitter.

5. **BRAVO** used his position at Money Transmitter and his understanding of Money Transmitter's compliance policies and procedures to evade Money Transmitter's anti-money laundering controls and conceal the illicit source of the funds he laundered.

6. **BRAVO** frequently communicated with drug traffickers to coordinate the delivery of bulk cash to Money Transmitter on days he was working.

7. **BRAVO** structured the amount of money to be sent to Mexico across multiple transfers, ensuring that each transfer was always right below $1,000—Money Transmitter's threshold for collecting and verifying a customer's identification document.

8. To transfer the funds, **BRAVO** created fake names of Hispanic origin to serve as the senders and sent the money to straw beneficiaries in Mexico whose names he received from cartel members every time they wanted to send bulk cash to Mexico.

9. After processing the transfers, **BRAVO** forged the signature of the senders on each payment confirmation receipt and texted screenshots of the receipts to his co-conspirators so that the funds could be redeemed in Mexico. **BRAVO** knew

that the receipts had to be signed by the sender and that Money Transmitter kept a copy of the receipts in its files, which were periodically audited.

10. **BRAVO** charged approximately $40-50 for each transfer that he processed for his co-conspirators, which was separate from the standard $10 fee collected by Money Transmitter.

11. During the course of the conspiracy, **BRAVO** laundered at least $750,000.

12. **BRAVO** took deliberate steps to conceal his money laundering. For example, in response to a co-conspirator's request to process twelve transfers, **BRAVO** replied, "I can't do so many in just one day because problems come up, I can do six maybe seven for you but that's it." On another occasion, **BRAVO** texted his co-conspirator that he could not send money: "…the money business called us and gave us a list of suspicious transactions, I have to act like an idiot, but you have to wait for the waters to calm…"

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATIONS

13. Count 1 of this Indictment is incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(1).

14. Upon conviction of Count 1 of this indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

15. If any forfeitable property is unavailable for forfeiture as described in Title 21, United States Code, Section 853(p), the United States intends to forfeit substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

DANIEL N. ROSEN
UNITED STATES ATTORNEY

FOREPERSON

MARGARET A. MOESER, CHIEF
CRIMINAL DIVISION, MONEY LAUNDERING,
NARCOTICS AND FORFEITURE SECTION
U.S. DEPARTMENT OF JUSTICE